THOMAS J. ARMSTRONG, Appellant, v. SCHOOL DISTRICT No. 3, TOWNSHIP 50, RANGE 28, Respondent.

### Kansas City Court of Appeals, December 5, 1887.

1. EVIDENCE—PROOF OF EXISTENCE OF CONTRACT—RECOGNITION OF IT SUBSEQUENTLY.—Where the uncontradicted evidence is, as to the contract in controversy in this case, that the plaintiff, and all three of the directors, signed the contract before plaintiff entered upon its performance, and it was taken and kept by the clerk of the board, as of the papers on file by the board, this made out a *prima-facie* case, and entitled the plaintiff to introduce it in evidence. The burden of proof thereafter would shift to the defendant, to show that it was not the contract, or that it was not binding. It is not essential to the validity of the contract that the directors should sign it simultaneously. A contract, valid on its face, actually carried out in full, with the acquiescence of all concerned, cannot be subsequently repudiated.

2. SCHOOL BOARD—POWERS OF LIMITED BY STATUTE.—As a corporation under the statute, the board of directors ( of schools) are precisely what the statute has made them. They are nothing more, nothing less. They are endowed with only such powers and faculties as the statute has expressly delegated, and none others. It

could appoint no agent to represent it in such matters, as to pay plaintiff any sum, or to have paid the witnesses, in this case, any sum, to procure a discontinuance of the suit.

3. CONTRACT—CONSIDERATION—RIGHT OF ACTION TO THIRD PARTY—ACCORD AND SATISFACTION.—To give a third party who may derive a benefit from the performance of the promise a right of action, there must be (1) an intent by the promisee to secure some benefit to the third party, and (2) some privity between the two, the promisor and the party to be benefited, and some obligation, or duty, from the former to the latter, which would give him an equitable claim to the benefit of the promise, or an equivalent from him personally. There must be a sufficient consideration passing between the promisor and his immediate promisee, and then the third person must adopt the promise, and then bring himself into privity with the promisor, but no otherwise. This does not constitute an accord and satisfaction.

4. WITNESSES—EXAMINATION OF—IMPROPER CROSS-EXAMINATION.—It is improper, in cross-examination of a witness, to elicit facts which constitute no matter of defence, and which are neither explanatory nor contradictory of any relevant matter brought out in the examination in chief, and the only effect of which is to introduce a collateral and immaterial issue.

APPEAL from Lafayette Circuit Court, HON. JOHN P. STROTHER, Judge.

*Reversed and remanded.*

Statement of case by the court.

This case was in this court heretofore, and is reported in 19 Mo. App. 462. After it was remanded, the defendant filed an amended answer, in which it set up the misconduct of the plaintiff, pleaded substantially in the first answer, and which was held, in the opinion of this court, to constitute no defence. This part of the amended answer was, on motion of plaintiff, stricken out. The answer further pleaded, by way of accord and satisfaction, that, after the return of the verdict against the plaintiff in the former trial, and during the pendency of his motion for a new trial, he applied to various witnesses in the cause, and pleaded for a reduction or release of their fees as such witnesses, and that in consideration of his promise, and the understanding of said

witnesses that he would not further prosecute his said action, said witnesses either remitted to him a part of their said fees, or wholly released them ; that said witnesses were taxpayers in said school district, and deeply interested in the settlement of this litigation, deemed by them as vexatious, and disturbing to the peace of the neighborhood, etc.

The reply tendered the general issue to the new matter contained in the answer.

On the trial, it appeared that there was no record entry, on the record books kept by the board of directors, of the contract made with plaintiff, for teaching the schools in question, or, if there had been any, it had disappeared, the evidence showing several missing pages in said book, though there was no evidence to show that these missing pages contained any entries respecting this matter. The plaintiff, to show the formal execution of this contract by the board of directors, introduced evidence tending to show that, at the first trial of this cause in the justice's court, the defendants produced the contract in question, as among the papers in custody of the clerk of the board, and it was admitted in evidence without objection. The evidence further showed that this contract was signed by all three of the directors and the plaintiff, and that it, together with the plaintiff's certificate from the school commissioner, authorizing him to teach, had been left with the clerk of the board of directors, and by him kept during all the time the plaintiff taught, four and one-half months of the six months' term called for by the contract. One of the directors testified that he signed the contract in the presence of the plaintiff, after the other two members of the board had signed it, and that all three of the directors had met, in the public road near the schoolhouse, and discussed the matter of hiring the plaintiff as such teacher. The clerk of the board testified that he did not, during the years from 1881 to 1884, during the time this contract was made, keep a record of such contracts. This witness testified that he signed the contract in

plaintiff's presence, and then carried it over to the third
director to sign, and filed it away, with plaintiff's certifi-
cate.   He further testified : " I kept the contract in my
possession after it was signed ; I kept it put away
with other district records and papers ; I had a good
many records, and this was among them locked up.  *  *  *
I was to take care of the contract ; it was put in my cus-
tody to take care of for the district ; I kept them as
clerk ; I was one of the directors, and signed the contract
as such ; don't think we had any formal meeting of the
board when we hired Armstrong ( plaintiff ) ; we met
accidentally."   Plaintiff's evidence showed that the
board of directors, as a board, after plaintiff entered
upon his work as such teacher, gave him, in writing, the
rules for the government of the school and had in every
way recognized him as such teacher.   The board ordered
warrants on the proper officer, from time to time, for his
pay for four and a half months thereafter.

At the end of this time the board ordered him, ow-
ing to complaints against his conduct of the school, to
discontinue teaching.   The   schoolhouse   was barred
against him, so that for the remainder of the term he did
not teach.   This suit is to recover for the balance of the
term.   The contract was admitted in evidence, and is in
the usual form of such teachers' contracts, with some
unimportant erasures made prior to the signing.   On the
cross-examination of the plaintiff the defendant's coun-
sel was permitted, over the objection of the plaintiff, to
ask him various questions respecting the grounds of the
complaints and accusations against him as the basis of
the action of the board in dismissing him.   He was, for
instance, compelled by the court to state, that one of the
charges against him was permitting scholars to carry
pistols in school, and that he did not open his school at
seasonable hours ; and that he was charged with permit-
ting disorder in his school, and suffering boys to pin in-
decent notes to the girls' clothing, and the like.   The
defendant, to sustain the accord and satisfaction pleaded
in the answer, was permitted, against the objection of

the plaintiff, to introduce in evidence various receipts, given by witnesses to the plaintiff, in satisfaction of their fees for attendance upon the former trial of this cause. Most of these witnesses testified that the plaintiff after the former trial came to them, stating that he was a poor man, and, if he had to pay these fees in full, it would ruin him ; that he would have to sell his cow, his watch, etc., and sued for clemency ; that he stated he was done with the suit, and if they released their fees he would have nothing further to do with it.     They testified, or at least some of them, that in consideration of his plea and promise, and to end the litigation, they forgave part of the amounts due them, and one or more, perhaps, released the whole sum due them.     Most of these witnesses were taxpayers in this school district, some were not.

The instructions are voluminous ; and they are sufficiently noted in the opinion of the court.

Under the instructions the jury returned a verdict for the defendant.

The plaintiff again appeals.

GRAVES & AULL, for the appellant.

I.   The following cases settle the law that the appellant had a valid teacher's contract, and that the court committed flagrant error in refusing the said instruction, numbered one, asked for the appellant, and in giving of its own motion said instruction numbered nine, and in giving, at instance of respondent, instruction numbered two.   *Halloway v. Ogden School District No.* 9, 28 N. W. Rep. 764 ; *Bellows v. District*, 30 N. W. Rep. 582.   And so the error is palpable in granting said instruction numbered nine and refusing that numbered two. On the uncontradicted evidence it was the duty of the court to declare the legal effect of said contract and not to submit the same to the jury, especially after the court, in contempt of the former rulings of this court, had prejudiced the jury by allowing an illegal cross-examination of appellant.   " It is the duty of courts and not juries to interpret contracts."     *State to use v. Donnelly,* 9

Mo. App. 520. "The interpretation of a contract and its acceptance are wholly for the court." *Falls Wire Manufacturing Co. v. Broderick*, 12 Mo. App. 378. "The court and not the jury must interpret written con-tracts." *Brecheisen v. Coffey*, 15 Mo. App. 80.

II.   As to the error committed by the court in per-mitting the cross-examination of appellant, we simply re-fer your honors to your own decision in this same case. *Armstrong v. School Dist.*, 19 Mo. App. 464, *et seq*.

III.   The action of the trial court in permitting the evidence concerning the compromise of witness fees, pre-sents a clear case of legal atrocity.   These compromises were not made by the board of directors and not by their authority.  They had no reference to the settlement of the claims of appellant against respondent.   The action of the court in permitting this evidence, and in the ruling on the instructions, is so utterly unlike the conduct of a judicial tribunal as to suggest the question whether the judge did not address his whole ingenuity to invent some method of circumvention of the decision of this court in this same case as found in 19 Mo. App. (*supra*).   These compromises were strictly *inter alios* and affected another subject-matter, that is, witness fees.   The following authorities conclusively show the grave error of the trial court upon this branch of the case. *Daniels & Lamont v. Hallenback*, 19 Wend. 409 ; *Clow v. Brost & Best*, 6 Johnson, 38.  In *Muller v. Eno* (14 N. Y. 605) the court says : "If a third person, without the authority of the plaintiff, and not in privity with him, had paid to defendants, in money, a full sat-isfaction for the breach of the warranty in question, it is well settled that such a payment would have been no defence to a suit on the warranty, and no answer to the defendant's right of recoupment." In the *Atlantic Dock Co. v. Mayor* (53 N. Y. 67) the court says : "A payment by a stranger, between whom and the defendant there is no privity, cannot be availed of.  To be effectual payment, if by a third person, it must be by him as agent for or on account of the one liable, and with the prior authority,

or subsequent ratification of the latter." *Simpson v. Eggington*, 10 Ex. Ch. 845; *Simpson v. Brown*, 68 N. Y. 355; *Johnson v. Morgan*, 68 N. Y. 494; *Miller v. Winchell*, 70 N. Y. 437; *Clark v. Dickenson*, 74 N. Y. 47; *Roe v. Barker*, 17 Hun (N. Y.) 84; *McCafferty v. Decker*, 12 Hun (N. Y.) 455; 3 Brightley Dig. 4511, 7, 8. These witnesses who compounded their fees were strangers to the corporation, and they testify that they did not act as its agent in the matter. 1 Dill. on Mun. Corp. (2 Ed.) 91, 94.

WALLACE & CHILES and JOHN S. BLACKWELL, for the respondent.

I. There was no error in the court below in permitting the plaintiff, Armstrong, to be cross-examined about the matters objected to and excepted to by the plaintiff. This cross-examination had reference to the conversation between the plaintiff and the school directors on the twelfth or thirteenth of February, 1882, introduced by the plaintiff in his examination-in-chief. Having introduced a part of this conversation himself, the defendant had the right to call out before the jury the whole of such conversation. And the only way to do it was to ask the plaintiff, on cross-examination, whether these things asked about were not said there to him, by said directors, in said conversation. And that was the principle upon which it was permitted. It would have been error to have refused to permit such cross-examination. Greenleaf Evid. (4 Ed.) sect. 445. A witness may be cross-examined "as to facts and circumstances connected with the matter stated in his direct examination." *Ibid.* It was competent also to test the witness' memory, credit, interest, motives, prejudices, and the "just weight and value of his testimony." *Ibid*, 446 and p. 1. Collateral facts are permissible on cross-examination. *Ibid*, 448 and 468. As to admissions and conversations, see Green's Evid. (4 Ed.) sect. 201; *Burghart v. Brown*, 51 Mo. 600; *Howard v. Newman*, 5 Mo. 323; *Reeves v. Hardy et al.*, 7 Mo. 348. The plaintiff complains of his own version of the conversation. There was no error in the court be-

low excluding the parol and secondary evidence, offered by the plaintiff to prove his teacher's contract, excepted to by him, while he persistently failed and refused to offer his contract in evidence, and would not offer it till near the close of his case. *Maupin v. Franklin Co.*, 67 Mo. 327.

II.   There was no error in admitting the evidence of the agreement by the witnesses with the plaintiff as to their fees.   It is a good defence, properly pleaded, and the evidence was properly admitted to prove it. *Rogers v. Gosnell*, 51 Mo. 466 ; *Robbins v. Ayres*, 10 Mo. 538; *Meyer v. Lowell*, 44 Mo. 328 ; 1 Parsons on Cont. [7 Ed.] 466 ; *Lawrence v. Fox*, 20 N. Y. 268 ; *Bank v. Benoist*, 10 Mo. 519 ; *Flanigan v. Hutchinson*, 47 Mo. 237 ; *Howard v. Coston*, 33 Mo. 118 ; *Besshears v. Rowe*, 46 Mo. 501.

III.   An answer or replication may allege facts which have occurred since the institution of the suit. 1 Rev. Stat., p. 605, sect. 3535 ; and see authorities cited in second point of this brief.   Nor was there any error in giving said instructions two and seven on the part of defendant.   They are fully authorized by the law. 2 Rev. Stat., sect. 703, p. 1387.   The "power" to contract is conferred on the "board," not on the individual members of the board, acting separately.   This section refers to regular meetings of the board.   The act of 1883 (Session Acts of 1883, p. 185), extends the power to "special" meetings of the board.   Sess. Acts, 1885, 240 ; *Johnson v. School District*, 67 Mo. 219, 221-2 ; *Maupin v. Franklin County, supra ; Medlin v. Platte County*, 8 Mo. 235.

IV.   The court did not err in refusing the instructions asked for by plaintiff as being either a commentary on the evidence ; or not properly presenting the facts in evidence ; or being based upon no evidence ; or not being the law ; or being contradictory or misleading in character.   Those given to plaintiff with those given by the court of its own motion fairly presented the law of the case to the jury.

V.    The authorities cited by appellant in his brief are not in point, and, properly understood, do not militate against the authorities and positions of respondent. The case of *Atlantic Dock Co. v. Mayor of New York* (53 N. Y. 64), on which appellant lays so much stress, is not in point.    Besides, that was a suit *ex delicto*. And even there, at page 67, it is decided that plaintiff's claim "may be extinguished by accord and satisfaction," which was pleaded in that case as well as in the case at bar, and in estoppel.    *Babcock v. Dill*, 43 Barbour in Am. Law Reg. ; 5 N. S. 186.

VI.    Respondent submits that no error was committed by the court below against appellant, and certainly none materially affecting the merits of the action, and that the judgment below is for the right party.

PHILIPS, P. J.—This cause would seem to be contested far beyond its merits.    It is a subject of regret that the defendant could not accept the decision of this court, and adjust this controversy without further trial. The case must, however, so long as it remains in court, be tried according to law.

I.    We see no just ground for questioning the existence of the contract upon which the plaintiff entered upon the office of teacher in the district.    The uncontradicted evidence is, that the plaintiff and all three of the directors signed the contract, before plaintiff entered upon its performance.    It was taken and kept by the clerk of the board, as of papers on file by the board. This made out a *prima-facie* case, and entitled the plaintiff to introduce it in evidence.    Rev. Stat., sect. 7046 ; *Crane v. Bennington School District*, 28 N. W. Rep. 106.    The burden of proof thereafter would shift to the defendant to show that it was not the contract, or that it was not binding.    What other proof could he have introduced than the testimony of the board of directors themselves ?    This evidence shows that they did meet prior to signing this contract, in the road near the

schoolhouse, and talked over the matter of employing the plaintiff as teacher. One of the directors remarked to the other two, that he did not like the terms of compensation ; but left, with the statement made to the others, "whatever you do I will agree to." The plaintiff thereafter drew up the contract, signed it, and gave it to one of the two named above, who signed it, and took it to the other of said two, who signed it, and he took it to the third member, who also signed it. It was then filed, with the plaintiff's certificate of qualification, among the papers of the board, and kept there until the trial of this cause in the justice's court, where it was produced by the defendant, and by it used in evidence as the contract. Under this contract the plaintiff taught the school for four and a half months, of the six months' term it called for. The board recognized the contract in every conceivable form. They drew up written directions, or rules, for the government of the school, and delivered them to the plaintiff as the teacher. They drew warrants in his favor and paid him as such teacher. After all this, and after the cause has been through the justice's court, and the circuit court, and the court of appeals, for the first time is the validity of the contract called in question ; and it was left to the jury to say whether it is a contract, inasmuch as there was no record entry in the minutes of the board of directors showing its adoption, and there is some question as to whether it was signed by two of the board at the same time, or whether there was a concurrence in point of time in their assent to its terms.

The case of *Johnson v. School District* (67 Mo. 319) is not relevant. That was an attempt on the part of two directors to bind the district to pay for certain maps, globes, etc. Without any prior consultation, and at different times, and separately, two of the directors signed an order, for the amount of these articles, on the treasurer. The authority to make such a contract was conferred on the board by section 8, page 1243, Wagner's Statutes, now section 7044, Revised Statutes, 1879. It was

held that the order was void, because the district clerk alone was authorized to draw such order. And as there was, in fact and law, no contract made by the district board, there could be no ratification of the unauthorized act by reason of the mere use of the articles in the school. The contract under review is provided for in section 7046, Revised Statutes: "The board shall have the power to contract with and employ legally qualified teachers for and in the name of the district. The contract shall be signed by the teacher and a majority of the directors, * * * and, with the certificate of qualification, shall be filed with the district clerk."

Under this statute the only evidence of such a contract is the written instrument itself, executed by the teacher, and, at least, two of the directors. And the only record evidence, contemplated by this statute, is the filing with the district clerk. This is more for the certainty of its keeping, and for the proper protection of the district. In *Crane v. Bennington School District* (*supra*), it is held that no record entry of the contract being authorized at a meeting of the board is required; that when it was signed by two of the directors, after the *consensus*, that was sufficient. The court further say: "When it was admitted, without any dispute, that the plaintiff taught under this contract for ten weeks, with the sanction and consent of the officers, and that orders were drawn by the proper officers for his pay as such teacher, it became entirely immaterial what the book of record showed, or whether there was any corporate action in hiring him, or authorizing the contract. School district officers cannot be permitted by the law to enter into a written contract with a teacher, none of them denying its validity for ten weeks, but recognizing it by making payments, and then, after the teacher, in the utmost good faith and reliance upon the contract, has taught that length of time, discharge him without cause, and plead in bar of his payment under the contract that they never met and consulted, nor took corporate action in hiring him, or made any record in

book of the execution of the contract." And in the subsequent case of *Holloway v. Ogden School District* (28 N. W. Rep. 764), it is expressly held that it is not essential to the validity of the contract that the directors should sign it simultaneously. The court say : " Plaintiff had a right to suppose his contract was valid when it was signed by a sufficient number of officers, and he was, with the personal knowledge of the whole board, permitted, and apparenty encouraged, to proceed. A contract valid on its face, actually carried out in full, with the acquiescence of all concerned, cannot be subsequently repudiated. The board cannot, by abstaining from holding meetings, and from doing its duty, set up its own wrong in defence of an honest claim." Under the undisputed facts of this case, the trial court should have treated this contract as valid, and simply declared its legal effect, as such, to the jury, instead of leaving to the jury to determine whether or not it was a contract at all.

II.    The only other question of any importance in this record is, what was the legal effect of the settlements made by plaintiff with some of the witnesses respecting their fees? Did it amount to an accord and satisfaction, as pleaded and claimed by defendant? This adjustment of witness fees was not a transaction had with defendant district, nor with any one authorized to act for it. The school board, in fact, had no authority itself to pay plaintiff any sum, or to have paid the witnesses any sum to procure a discontinuance of the suit. It might, in recognition of and pursuant to the terms of the contract, have drawn its warrant in settlement of an agreed balance thereon. As a corporation under the statute, the board of directors are precisely what the statute has made them. They are nothing more, nothing less. They are endowed with only such powers and faculties as the statute has expressly delegated, and none other. It could appoint no agent to represent it in such matter. The witnesses did not pretend to be acting as the agents of the board. They simply, for

the occasion, turned benefactors of the plaintiff, and patriots for the school district and neighborhood; and in the interest of public peace, *cum amore*, they yielded their claim, in part, for mileage and *per diem* while attending upon the judicial deliberations in this cause of local celebrity.

The defendant has cited no authority in support of its contention. The Missouri cases cited in the brief only go to the general proposition, that a party for whose use a contract is made, based upon a valid consideration, and this appearing upon the face of the contract, may sue thereon; and that this holds good in favor of those having a beneficial interest or concern therein. Such is the case of *Flanagan v. Hutchison* (47 Mo. 237). A was indebted to B for goods purchased. A sold to C, who promised in part payment of the purchase money, to pay B what A owed him. Held that B might sue C on this contract; for there was a privity to uphold it. But, even in this class of cases, the distinction is to be observed, so sharply put in *Vrooman v. Turner* (69 N. Y. 280, *et seq.*): "To give a third party who may derive a benefit from a performance of the promise a right of action, there must be, first, an intent by the promisee to secure some benefit to the third party; and second, some privity between the two, the promisor and the party to be benefited, and some obligation or duty owing from the former to the latter which would give him an equitable claim to the benefit of the promise or an equivalent from him personally. There must be a sufficient consideration passing between the promisor and his immediate promisee, and then the third person must adopt the promise and then bring himself into privity with the promisor, but no otherwise." The authorities are all one way as to this not constituting an accord and satisfaction.

In *Clow v. Borst et al.* (6 Johns. 37), the court say: "It is held not to be a good plea of accord and satisfaction to a bond that a stranger had surrendered a tenement to a plaintiff in satisfaction of the debt, which he

accepted, because the stranger was not privy to the bond, and a satisfaction given by him was not good. If this case be authority, and it does not appear ever to have been questioned, the plea in the present case is bad." This was followed in *Daniels v. Hollenback* (19 Wend. 408). In *Mueller v. Eno* (14 N. Y. 605) the court say : "If a third person, without the authority of the plaintiff, and not in privity with him, had paid to the defendant, in money, a full satisfaction for the breach of the warranty in question, it is well settled that such a payment and satisfaction would have been no defence to a suit on the warranty, and no answer to defendant's right of recoupment. In *Clow v. Borst* (*supra*) it was held to be no defence that the plaintiff had accepted a full satisfaction from a third party. So in 4 Paige, 654, which was a creditor's bill founded on a judgment, a plea that the judgment had been paid by the corporation of the City of New York as a gratuity to the complainant, a police officer, who had obtained the judgment for costs, etc., was held by the court of chancery to be bad. These cases go upon the principle that satisfaction by a stranger amounts to nothing. A party who has covenanted, or promised, must perform the agreement himself in all its legal consequences." And, again, in *Atlantic Dock Co. v. Mayor of New York City* (53 N. Y. 67), the court say : "A liability *ex delicto* may be extinguished by a release. It may be extinguished by payment. But a payment by a stranger, between whom and the defendant there is no privity, cannot be availed of. * * * It may be extinguished by an accord and satisfaction. But satisfaction by a stranger is no plea."

That the persons who settled their witness fees with the plaintiff did not sustain the relation of privy with the defendant is too manifest to admit of debate. The concern the party must have in the pending action must be the beneficial interest that springs from privity in estate. Simply because they may chance at the time to be taxpayers in the given district will not meet the requirements of the law. Such a doctrine would make

every taxpayer in a municipal corporation a privy in every action, *ex contractu* or *ex delicto*, against the corporation. Neither can it be permitted that every citizen of the neighborhood who feels an interest in a law suit against his neighbor, or his district, can be regarded as a privy. The law recognizes no such sentimentality. On the contrary, it should be rather the policy of the law to suppress than encourage such intermeddling in judicial proceedings by outside parties. Indeed, it would seem a little remarkable that this defendant should avail itself of this settlement of fees entailed upon the plaintiff by a judgment in favor of this defendant, which this court held to be erroneous, and vacated. The court erred in not directing the jury to disregard such evidence.

III. The cross-examination of the plaintiff, in the manner set out in the statement of facts, was clearly improper. The facts thus elicited constituted no matter of defence. *Armstrong v. School District* (19 Mo App. 462). It was neither explanatory nor contradictory of any relevant matter brought out in the examination in chief. Its only effect and office was to unduly prejudice the minds of the jury against the plaintiff's cause, and to introduce a collateral and immaterial issue.

The other judges concurring, the judgment of the circuit court is reversed and the cause remanded.